Davis, J.,
delivered the opinion of the court:
In 1855 George W. Morse filed in the Patent Office a caveat which he entitled a “Description of improvements in breech-loading guns and cartridges for the same, for either cannon or small arms.” Speaking of the gun, he said that the barrel should be so constructed that the gun could be opened and closed at the breech by a movable breech piece “ which does not necessarily fit tight into the bore of the breech of the gun, but only to remain firmly in its place when the gun is in proper position for firing.” He proposed in this caveat that what he named “the cartridge or breech pin (if it should be made to enter the gun) should be so constructed of metal or combination of other materials behind the powder that by the explosion of the powder it will expand and perfectly fill the bore of the gun behind as the minie ball fills the cavity of the gun by the *380 enlargement of tbe afterpart of tlie same by the explosion of the powder.” He proposed that cartridges haying a leaden case should be provided for his gun, the cartridges to be in any form consistent with the principle which he thus claimed, “although it [the cartridge] or the breech pin may enter the gun loose, yet the effect of the explosion will be to render the gun perfectly tight behind the powder.”
This caveat was followed by application for letters patent upon a gun and cartridge. In the Patent Office tlie application was separated, and two patents were issued in the year 1856, the one, (No. 15995), upon the gun, the other, (15996), upon the cartridge. The first of these patents was extended by act of Congress and expired November 29,1879; the second (No. 15996) expired October 28,1870. This action was begun April 12,1884. The statute of limitations, therefore, runs against and bars any possible claim under this second patent.
The case turns primarily upon claim 1 in patent 15995, which reads as follows:
“1. Inserting the rim N, or its equivalent, without contact, into the chamber O, substantially in the manner and for the purpose described, contact being obtained through the medium of a cartridge case.”
This claim is thus construed by one of the counsel for the plaintiff:
“The claimant asserts that George W. Morse, the grantee of letters patent numbered 15995, was the lawful patentee of a device for sealing a breech joint of a breech-loading gun, purposely made open, by the expansion of a yielding metallic cartridge case, purposely made to fit loosely in its chamber.”
Another of plaintiff’s counsel states the scope of this patent in argument substantially as follows:
“Morse discovered a method or art by which a breechblock, so constructed as to be free in operation under all circumstances, shall be automatically sealed at the moment when the use of the gun imperatively requires a close connection between the breechblock and the gun barrel.”
Upon either statement the claim is for a broad device which shall practically cover subsequent inventions for sealing loose-jointed breech-loading military firearms by an expanding metallic cartridge.
In view of this contention it becomes necessary to examine *381 the state of the art in the year 1856, when this patent was issued.
The first form of firearm was the breechloader; but as the imperfect fitting of the breech mechanism permitted the rearward escape of gas and flame, the muzzle-loader was adopted and continued in use until the close of the last war; meantime, and for many years, inventors had been searching for an efficient gas check capable of useful application to a military breech-loading musket. At first all efforts were directed to the manufacture of a mechanism which by the close fit of its parts should attain the desired result. Many devices of this kind were invented. None (so far as appears) had much practical value, unless possibly in light sporting arms. The reason is plain. The carefully adjusted breech mechanism was apt to become inexact (and might become dangerous) through wear, rust, or dirt. An absolutely mechanically correct adjustment of the parts was in theory possible, but in practice the slightest injury to the gun, the least rust or the presence of sand or earth, rendered it inefficient.
Long before 1856 inventors had recognized the necessity of a comparatively loose mechanism in the breechblock, combined with a sufficient gas check through the expansive cartridge, if practical efficiency in this class of firearms were ever to be attained. Several patents are referred to in the findings of fact which show the endeavor of small-arms inventors in this century. A citation or two, by way of illustration, may not be amiss.
In 1835 the Society for the Encouragement of National Industry in France issued a bulletin headed “Mechanical arts— firearms,” being a report made by Baron Séguier. This report is set forth in the findings, and from it we make only the following excerpts. Alluding to the loss of gas, which offered (it was said) “ that double inconvenience of diminishing the range and blacking the fingers,” the report proceeds (we quote from translation):
“Mr. Lefaucheux, desiring to satisfy in all respects the many sportsmen who honored him with their confidence, put himself again to the task, without despairing of success; so, to surmount a last obstacle, he was happily led to apply to the guns the closing principle of hydraulic presses; we speak of *382 that punched-up leather whose edges rub against the sides of a vase with all the greater force as the liquid which it contains is the more compressed and has a greater tendency to escape.
“You understand, gentlemen, that in adopting this principle of closure for guns, as there is no question of preventing an escape of liquid but of burning gas, it was proper to modify the material of the stopper, therefore it is not a cap of leather, but a bottom of thin brass with which Mr. Lefaucheux caps his cartridges. The flexible edges of this hat, having the form of a large capsule, dilates at the moment of explosion, and rubs tightly against the sides of the barrel with such exactness that the slightest escape of gas becomes impossible. # * * We look upon it as one of the most useful improvements applied for a long time to breech-loading sporting arms.
“ This, according to our opinion, is a true service rendered to the entire art of gun-making. By its use the least exact breech closures are safe from the escape of gas, and henceforth it will not be the exactitude, but alone the strength of the closure which shall render the problem of the manufacture of arms with broken breech difficult to solve.”
Nearly twenty years before this (in 1816) Pauly had taken out his English patent for what he termed “ apparatus and arrangements for discharging firearms by means of condensed air, also cartridges applicable thereto.” His description, which is long, contained the following paragraph:
“Having described the various forms and constructions which I give to cannon or other large arms for the purpose of loading or charging them at the breech or butt end, I shall in the next place describe my culot, plug, or cartridge stopper, which is an essential part of invention, which must be used with any or all the constructions of cannon which have here-inbefore been described or mentioned by me when the same are to be fired or discharged. The great obstacle to the use of large arms loading at the breech has hitherto been the difficulty of producing an air-tight or perfect closure between the movable breech and the body or remainder of the gun; and if the efforts of the explosion can at all make way into this joint or closure the construction becomes dangerous, inasmuch as the opening will become larger, and eventually the moving breeching may be blown away or torn from its situation. 'This effect will entirely be prevented by the adoption of my culot, plug, or cartridge stopper, which is so placed in the gun as to come between the charge of gunpowder and the movable breech in all cases, and is formed of lead, copper, or such other ductile material as will give way to the explosive force of the charge, and so formed and situated that by yielding or giving way it will completely and effectually cover and close up the joint or joining between the movable breeching and the gun itself.”
*383 Here, then, Pauly recognized the necessity of a gas check between the “movable breech and the body or remainder of the gun,” and proposed to furnish it by means of a cartridge “formed of lead, copper, or such other ductile material” as should yield under explosion and seal the joint. Other citations might be made, but they seem unnecessary.
The state of the art in 1856 was not such in our opinion as would permit a patent to issue covering so broad a claim as that made by plaintiff’s counsel in this case. The advantages of loose breech mechanism were known when Morse applied for his patent; the metallic cartridge as an invention was old, although practical difficulty had been encountered in manufacturing it; the use of a cartridge as a gas check was by no means a novel idea. It was not open to Morse in 1856 to patent every “device for .sealing a breech joint of a breech-loading gun, purposely made open by the expansion of a yielding metallic cartridge case, purposely made to fit loosely in its chamber;” quite the reverse; this idea had been disturbing inventors for many years; Morse came to the Patent Office limited to some specific, mechanical device which should solve the long-studied problem, and he must be held to the one described in his application. Morse was by no means the first in the field, and therefore he is not entitled to-the very liberal construction which is here asked.
The claim upon which plaintiffs rely (the first in patent 15995) is on its face a narrow one, limited to a specific device. They, however, contend that as the patent was issued under the act of 1836, the question is (to quote from the brief) “whether in his specification as a whole, including the claim, this device was particularly specified and pointed out as his own invention for which he demanded the protection of letters patent.”
Without deciding whether this contention as to the law is correct we turn to the specifications, and find the invention described as a “new and useful breech-loading gun;” this gun to be so constructed that he could “ blow through it or run water through it with facility, but when the charge is in, it becomes comparatively air and water tight, because I use a cartridge case which seals the breech joint both as to powder and the priming.” Here nothing novel is described, as a loose-jointed mechanism was known, and the use of a cartridge as a *384 gas check was known; the kind of cartridge was not specified; neither was the combination of the two (i. e., the loose-jointed mechanism and the cartridge) as a broad device then open to a patent. Further on Morse describes the mechanism which he afterwards “ claims ” as his invention in the form we have seen. Safety in the gun and the fact that water will not impair its efficiency appear from this specification to have been Morse’s main objects.
Another patent, granted to Morse the same, day (October 28,1856), did cover a metallic cartridge intended to be used as a gas check, but that patent expired in 1870; because of the statute of limitations no recovery can be had in this action prior to 1878; therefore no rights under this patent can be urged here. Nor can the cartridge patent be imported into the patent for the gun. A claim for a system founded upon two patents can not be sustained where one of the patents has expired by limitation.
The specific device described in the specification and claim of patent 15995 does not appear in the Government gun. (Morse Arms Company v. Winchester Arms Company, 33 Fed. Rep., 170.)
Patent 20503, issued June 8, 1858, after being extended by statute, expired June 8,1879; it contained a claim of a cartridge extractor, and this extractor, or its equivalent, it is contended, is in the Springfield gun. The claim is as follows:
“Third. The construction and use of the lever, when arranged substantially as described, for the purpose of retracting the cartridge case.”
Under this and the specifications set forth in the findings, counsel urge the broad claim for a lever when the toe is in front of the flange, no matter how operated. We have discussed the question of cartridge extractors in the case of the Berdan Firearms Manufacturing Company (26 C. Cls., R. 48). The extraction of cartridge shells by leverage was not new in 1858, and Morse in this patent, as in the earlier one, must be confined to his specific invention and to his use of a lever for pushing or pulling out a cartridge from a gun barrel. Bourcier’s spatent (1847,1848, and 1852), G-astinne’s patent (1853), Belford’s (1853), and Hick’s (1857), all set forth in the findings, sufficiently show that the automatic or mechanical extraction of cartridges did not originate with Morse, and that he was *385 not tbe first to use a lever whose short arm should, engage the forward side of the flange. Morse must in any event be limited to the' specific device described by him, and this device does not appear in the Springfield rifle.
Petition dismissed.